*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        :
MARY MUSOLINO                           :
                                        :
            Appellant,                  :
                                        :    Case No. 14-514(FLW)
        v.                              :    Bankr. Adv. Case No. 13-01685(KCF)
                                        :
THOMAS J. ORR.                          :    **OPINION**
                                        :
            Appellee.                   :
_____ :

**WOLFSON, United States District Judge:**

Appellant Mary Musolino ("Appellant" or "Musolino") appeals the decisions of the Bankruptcy Court granting summary judgment to Chapter 7 Bankruptcy Trustee Thomas J. Orr ("Trustee" or "Appellee"), to avoid, pursuant to 11 U.S.C. § 544(a), Appellant's interest in certain real property held by the Bankruptcy Debtor Lottie Hoberman ("Debtor"), and denying Appellant's cross-motion for summary judgment against the Trustee and Third Party Defendants Amboy National Bank ("Amboy") and Wells Fargo, N.A. ("Wells Fargo") (collectively, "Third Party Defendants"). This Court has jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons set forth below, the Court affirms the decisions of the Bankruptcy Court.

I.      **Background**

This appeal involves ownership interests in the property located at 389-391 East Main Street, Somerville, New Jersey 08876 (the "Property"), and, specifically, several conveyances of the

Property.  These and other relevant facts are set forth as follows.[1]

By deed dated May 20, 1967 and recorded on June 23 of that year, Debtor became an equal owner of the Property with her mother, Theresa Uryc ("Uryc"); each party owned an undivided one-half interest in the Property (the "May 1967 Deed").[2]  In December of that year, Uryc passed away and bequeathed her one-half interest in the Property to Appellant, who is Uryc's other daughter and who also served as executrix of Uryc's will.  R. 34-35.

Appellant began living on the Property in 1968, but did not record her one-half interest for nearly two decades. In a deed dated February 25, 1987 (the "February 1987 Deed") and recorded on April 6, 1987, Appellant, in her capacity as executrix and grantor, conveyed the one-half ownership interest held by Uryc's estate to Appellant in her individual capacity, for the price of one dollar. R. 37-40.[3]  Then on April 23, 1987, Appellant—again in her capacity as executrix of Uryc's estate—and Debtor together as grantors, conveyed their interests in the Property to Debtor alone (the "April 1987 Deed"). R. 41-44.[4]  The only other conveyance mentioned in the April 1987 Deed is the May 1967 Deed; the April 1987 Deed contains no reference to the February 1987 Deed.

---

[1]     Facts are drawn from the record supplied on appeal.
[2]     I note that Debtor held her interest in the Property with her now former spouse; however, Debtor's spouse is not relevant to this appeal and for that reason, I refer to Debtor in the singular, without reference to her spouse.
[3]     Specifically, the February 1967 Deed states: "The Grantor grants and conveys (transfers ownership of) the [Property] . . . to the [Appellant] . . . for the sum of one dollar." R.37.
[4]     The April 1967 Deed specifically states that "The Grantor grants and conveys (transfers ownership of) the [Property] . . . to the [Debtor] . . . for the sum of one dollar . . .," identifies the "Grantor" as both the Debtor and the Appellant as Executrix. R. 41.  The last sentence of the April 1987 Deed further recites that "[Appellant] executes this Deed as Executrix under said Will for the sole purpose of exhausting the power of sale granted under the terms of said will." R. 42.
        According to Appellant, she executed these two deeds because she was informed by her attorney that both were necessary to clear title over her individual interest in the Property. Aff. of Mary Musolino, ¶ 14.

2

On February 10, 2004, Debtor granted a mortgage on the Property to Amboy.  R. 79.  Before executing the mortgage, Amboy hired Jersey Land Abstracts to perform a title search of the Property, which was completed on January 26, 2004.  The Jersey Land Abstracts title search revealed Debtor as the sole owner of the Property, by virtue of the April 1987 Deed.  Subsequently, Debtor executed another mortgage on the Property with Wachovia Bank, N.A., now known as Wells Fargo.  Appellant was neither a party nor a signatory to either mortgage agreement, and the record does not reveal whether Appellant had any knowledge of these mortgages prior to when Debtor's bankruptcy proceeding commenced.  Throughout this time, Appellant continued to live on the Property.

On February 27, 2013, Debtor filed a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code. Thereafter, in an adversary proceeding to ascertain ownership interest in the Property, the Trustee moved for summary judgment on the grounds that, pursuant to the Trustee's powers under 11 U.S.C. § 544(a),[5] the Trustee held an interest in the Property superior to any interest of Appellant, and that, furthermore, Trustee could avoid whatever interest in the Property Appellant may hold.  Pl. Mot. For Summ. J; See Pl.'s Compl. ¶ 18, 22, 26.  Specifically, the Trustee

---

[5]   Section 544(a) of the Bankruptcy Code, often referred to as the "strong-arm" provision, provides in relevant:

> **(a)** The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> **(3)** a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11. U.S.C. § 544(a).

3

argued that under § 544(a), he assumed the role of a hypothetical bona fide purchaser of the Property as soon as Debtor filed her bankruptcy petition. The Trustee contended that as a bona fide purchaser, he took free and clear of Appellant's interest as established by the February 1987 Deed because nothing in the April 1987 Deed or a reasonable title search would put him on notice of Appellant's interest in the Property. In that regard, the Trustee supported his argument by relying on the Jersey Land Abstracts report prepared in connection with Debtor's Amboy mortgage, which concluded that Debtor was the Property's sole owner.

In response to the Trustee's motion, Appellant cross-moved for summary judgment, seeking a declaration both that (i) she has clear title to an undivided one-half interest in the Property, and (ii) her interest is not encumbered by either the Amboy or the Wells Fargo mortgages. In support, Appellant argued that the April 1987 Deed is a nullity because Appellant had no interest to transfer by virtue of the previously executed and recorded February 1987 Deed, and that a hypothetical purchaser would be on notice of this fact by conducting a sixty-year title search. In that connection, Appellant challenged the Trustee's reliance on the Jersey Land Abstracts search, instead arguing offering as evidence a sixty-year title search conducted by Prestige Title Agency, Inc., which revealed Appellant's one-half interest in the Property. In light of these facts, Appellant argued that allowing the Trustee to exercise his strong arm powers to avoid Appellant's interest would be contrary to law and/or inequitable. Finally, Appellant sought a declaration that her half-interest, as evidenced by the February 1987 Deed and the Prestige Title Agency search, is unencumbered by Debtor's mortgages because Appellant was not a signatory to those conveyances, and Debtor could only convey her interest in the Property.

The Bankruptcy Court granted the Trustee's motion and denied Appellant's cross-motion. In so ruling, the Bankruptcy Court first found that the April 1987 Deed was a nullity by virtue of the

February 1987 Deed; however, the Bankruptcy Court determined that Appellant's interest in the Property could nevertheless be avoided by the Trustee under his strong-arm powers. In that connection, the Bankruptcy Court accepted the Jersey Land Abstracts title search of the Property as evidence that a hypothetical bona fide purchaser would not be on notice of the February 1967 Deed, and would instead rely on the April 1987 Deed. R. 102. With respect to Appellant's cross-motion against the Third Party Defendants, the Bankruptcy Court declined to entertain Appellant's arguments on procedural grounds, finding that the relief Appellant sought against the Third Party Defendants exceeded the scope of the Trustee's motion. It is from these decisions that Appellant appeals.

**II.     Standard of Review**

The standard of review for Bankruptcy Court decisions is determined by the nature of the issues on appeal. Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005). Findings of fact are reviewed under a "clearly erroneous standard." Fed. R. Bankr. P. 8013. A factual finding is overturned as being "clearly erroneous" only when a reviewing court has a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993). On the other hand, legal conclusions from the Bankruptcy Court are subject to de novo, or plenary, review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir.1997). If the issues on appeal present both findings of fact and conclusions of law, the applicable standard, "clearly erroneous" or "de novo," must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-103 (3d Cir. 1981)).

Lastly, decisions on procedural bases are reviewed for abuse of discretion. In re United

Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005). Deference is the hallmark of abuse of discretion review. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 143 (1997); Koon v. United States, 518 U.S. 81, 98-99, (1996). Thus an exercise of discretion is not disturbed unless the court committed a clear error of judgment in making its decision, meaning that it relied upon "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Nutraquest, Inc., 434 F.3d 639, 645 (3d Cir. 2006); see also In re Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 320 (3d Cir. 2001); Int'l Union, UAW v. Mack Trucks, Inc., 820 F.2d 91, 95 (3d Cir. 1987).

## III.   Discussion

Appellant appeals the decision of the Bankruptcy Court granting the Trustee's summary judgment motion and denying Appellant's cross-motion on several grounds.  First, Appellant argues that Bankruptcy Court erred in finding that the Trustee had the status of bona fide purchaser for value as of the date at which Debtor's bankruptcy petition was filed.  In that connection, Appellant argues that the Bankruptcy Court erred by not requiring the Trustee to submit proof of a sixty-year title search of the Property, which, Appellant contends, would have revealed Appellant's interest therein.  Second, Appellant argues that the Bankruptcy Court erred in holding that the strong-arm powers allowed the Trustee to avoid Appellant's interest in the Property, contending that the strong-arm powers do not apply to the circumstances of Debtor's case, where there exists an undisputed, recorded deed, because such an application of the strong-arm powers is contrary to law and/or would be inequitable.  Finally, Appellant contends that the Bankruptcy Court erred in denying the cross-motion for summary judgment against the Third Party Defendants because, Appellant asserts, she held, and continues to hold, a one-half interest in the Property, which Debtor could not encumber through the mortgages to the Third Party Defendants.  I address

each of these arguments in turn.

### A. The Trustee's Strong-Arm Powers

In the summary judgment proceedings below, the Bankruptcy Court initially determined that, pursuant to § 544(a)(3), the Trustee held the status of a hypothetical bona fide purchaser of real property as of the filing of the Debtor's bankruptcy petition. R. 101. On appeal, Appellant argues that this determination was in error, contending that a trustee's bona fide purchaser status does not automatically arise upon the filing of a bankruptcy petition, but rather only when a trustee has conducted a proper title search of the property. Appellant's Reply Br., 6.  According to Appellant, the Trustee never obtained bona fide purchaser status, thus precluding the Trustee from using his strong-arm powers under § 544(a), because he did not offer evidence of a sixty-year title search of the Property.[6]

This argument is meritless.  To begin, Appellant cites to no case law or provision of the Bankruptcy Code in support of her claim.  Moreover, review of the applicable law is to the contrary:

> As a hypothetical bona fide purchaser, the trustee is deemed to have paid value for the [debtor's] property and is deemed to have perfected (i.e., recorded) his interest as legal title holder in the subject property as of the date of the bankruptcy petition's filing. The trustee also has the status of a hypothetical bona fide purchaser who is deemed to have searched the title of the [debtor's] property as of the petition's filing.

In re Bridge, 18 F.3d 195, 204 (3d Cir. 1994) (emphasis added).  The plain language of § 544(a) establishes that the strong-arm powers arise when the bankruptcy "case" is commenced, i.e., upon

---

[6]  It does not appear from the record that Appellant raised this precise argument below. Ordinarily, an issue that was not raised at bankruptcy court cannot be considered by the district court on appeal.  In re Kaiser Group Intern. Inc., 399 F.3d 558, 565 (3d Cir. 2005).  Nevertheless, in the interest of thoroughness and because the Appellant's new argument relates so closely to the issue of the general applicability of strong-arm powers, which was raised below, I address this aspect of Appellant's appeal.

the filing of the bankruptcy petition. 11 U.S.C. §§ 301(a), 302(a), 303(b); Fed. R. Bankr. P. 1002(a). Furthermore, absent from § 544 is any requirement that a trustee perform his own title search in order to secure bona fide purchaser status. Rather, § 544(a)(3) confers upon a trustee, whenever real property is at issue, the rights of a bona fide purchaser, "against whom applicable law permits," of the debtor's property, without any other requirement. Numerous courts have reached this same conclusion. See, e.g., In re Bridge, 18 F.3d 195, 199, 204 (3d Cir. 1994) (explaining that hypothetical bona fide purchaser is deemed, without taking any affirmative action, to have searched the title of the property as of that date of the bankruptcy petition); see also In re Aulicino, 400 B.R. 175, 180 (Bankr. E.D. Pa. 2008); In re Mariano, 339 B.R. 344, 347 (Bankr. D.N.J. 2006). Accordingly, I reject Appellant's argument that the Bankruptcy Court erred by not requiring the Trustee to perform a title search prior to assuming hypothetical bona fide purchaser status.

Appellant next argues that, even assuming the Trustee held bona fide purchaser status, § 544(a)(3) does not grant Trustee the ability to avoid Appellant's interest, evidenced by the recorded February 1987 Deed. Appellant's argument in this regard is two-fold. First, Appellant contends that the Trustee failed to establish that a hypothetical bona fide purchaser would not have been on notice of Appellant's interest identified in the February 1987 Deed because the Trustee did not offer evidence of a sixty-year title search on the Property. Second, Appellant argues that, regardless of whether a purchaser would be on notice of the February 1987 Deed, the strong-arm powers do not extend to circumstances where, as here, there is a recorded interest in property, because such a result would be contrary to law and/or inequitable.

At the outset, I note that Appellant correctly points out that the Bankruptcy Court determined that the April 1987 Deed was a nullity by effect of the February 1987 Deed; however, Appellant

ignores the Bankruptcy Court's conclusion that under § 544(a), this fact alone is insufficient to preclude the operation of the Trustee's strong-arm powers to avoid Appellant's interest. The strong-arm provision grants trustees the rights of a bona fide purchaser to the extent that applicable law permits a transfer of real property to be perfected, 11 U.S.C. § 544(a)(3). Here, applying New Jersey law,[7] the Bankruptcy Court determined that a hypothetical bona fide purchaser, i.e., the Trustee, would not have been on notice of the February 1987 Deed, and thus not on notice of Appellant's interest in the Property, because neither the April 1987 Deed nor an independent title search of the Property—the 2004 Jersey Land Abstract report—revealed the existence of the February 1987 Deed. On these facts, the Bankruptcy Court concluded that the Trustee held bona fide purchaser status over Appellant, and, by operation of § 544(a), could avoid any interest in the Property asserted by Appellant. There is no error in this conclusion.

The New Jersey Recording Act ("Recording Act") establishes that "[a] deed or other conveyance of an interest in real property shall be of no effect against subsequent bona fide purchasers . . . for valuable consideration without notice . . . unless [that] conveyance is evidenced by a document that is first recorded." N.J.S.A. § 46:26A-12. To receive the protection of the Recording Act, a purchaser must make a reasonable and diligent inquiry into the existing rights to the property at the time of a conveyance.[8] Friendship Manor, Inc. v. Greiman, 581 A.2d 893, 895

---

[7] The determination of property rights and interests in bankruptcy cases is decided by state law. Butner v. United States, 440 U.S. 48, 55 (1979). Once bona fide purchaser status has been obtained under the federal Bankruptcy Code, the extent and applicability of a trustee's strong-arm powers is defined by state law. In re Bridge, 18 F.3d 195, 200 (3d Cir. 1994); McCannon v. Marston, 679 F.2d 13, 14 (3d Cir. 1982); In re Aulicino, 400 B.R. 175, 180-81 (Bankr. E.D. Pa. 2008). Here, the parties do not dispute that New Jersey law applies.

[8] As the Third Circuit has explained:

> As New Jersey's recording statute is of the race-notice variety, "in order for a subsequent purchaser to have a priority she must achieve a dual status: she must

9

(N.J. Super. Ct. App. Div. 1990). In that regard, the Recording Act operates to give effect to a conveyance only to the extent that the conveyance can be discovered by a "reasonable" search of the particular chain of title. Palamarg Realty Co. v. Rehac, 404 A.2d 21, 26 (N.J. 1979); Howard Savings Bank v. Brunson, 582 A.2d 1305, 1309 (N.J. Sup. Ct. Ch. Div. 1990). Bona fide purchasers will be charged with knowledge of whatever a reasonable search would uncover, e.g., facts "to apprise him of the existence of an outstanding title or claim." Friendship Manor, 581 A.2d. at 895.

Appellant contends that a hypothetical bona fide purchaser should have been on notice of the February 1987 Deed, which conveyed the one-half interest in the Property held by Uryc's estate to Appellant. Although it appears that the Bankruptcy Court was correct in finding that this conveyance renders void the subsequent conveyance of the same one-half interest held by Uryc's estate to Debtor by virtue of the April 1987 Deed, this does not end the analysis under the Recording Act because the focus must be on what a hypothetical bona fide purchase of Debtor's property would have discovered. The February 1987 Deed is not within Debtor's particular chain of title prior to the April 1987 Deed. Nothing on the face of the April 1987 Deed indicates the existence of the February 1987 Deed, but instead only references the May 1967 Deed. Under these facts, the Bankruptcy Court correctly determined that the Trustee, as a hypothetical bona fide purchaser, would not have been on notice of the existence of the February 1987 Deed. Furthermore, the Bankrupcy Court also concluded that a reasonable search would not have uncovered the February 1987 Deed. Indeed, the Bankruptcy Court's conclusion is supported by

---

not only take without notice of the prior interest, but she must also put her interest on the record before the holder of the prior interest is able to do so."

In re Bridge, 18 F.3d at 198 n.1 (quoting 6A Richard R. Powell, The Law of Real Property ¶ 905[1][iii] (1993)).

10

the third-party Jersey Land Abstracts title search performed in 2004,[9] which determined that Debtor was the sole owner of the Property. R.102 ("[T]he fact that a disinterested third-party reached that conclusion is strong evidence that nothing in the [April] 1987 Deed would have put a bona fide purchaser on inquiry notice that there was a defect in the chain of title.").

Appellant nevertheless challenges whether the Trustee adequately established that a hypothetical bona fide purchaser would not have been on notice of the February 1987 Deed, arguing that the Jersey Land Abstract report does not satisfy the Trustee's obligation to conduct an inquiry into the Property's records. Specifically, Appellant argues that the only acceptable form of inquiry for a bona fide purchaser is a sixty year title search, which Appellant asserts is the "industry standard." Appellant's Br. On Appeal 24-25. In that connection, Appellant contends that if Trustee had performed such a search, the February 1987 Deed would have been discovered, identifying both the Debtor and the Appellant as owners of one-half interests in the Property, as evidenced by the sixty year title search that Appellant performed. See R. 58-59. Appellant's argument is misplaced.[10]

---

[9] Although the Jersey Land Abstracts report was prepared in 2004, whereas Debtor filed for bankruptcy in 2013, there is no dispute that the same search performed in 2013 would not have revealed anything different.

[10] Appellant also relies on the Debtor, at six points in the schedules of her Bankruptcy Petition, listing herself as having only a one-half interest in the Property. Bankruptcy schedules are not dispositive of whether assets are part of the bankruptcy estate. Rather, an asset that belongs to a debtor becomes part of an estate even if she fails to schedule it in her petition. See Neville v. Harris, 192 B.R. 825, 832 (D.N.J. 1996) (unscheduled assets remain part of the estate under § 544); see also Correll v. Equifax Check Servs., Inc., 234 B.R. 8, 10 (D. Conn. 1997) (a cause of action is part of the estate even if the debtor fails to schedule the claim in his or her petition); In re Brooks, 227 B.R. 891, 894 (Bankr. W.D. Mo. 1998). Thus, Appellant cannot obtain an interest that takes priority over that of the Trustee simply by virtue of how Debtor filled out her bankruptcy schedules.

In that connection, I note that Appellant's reliance on Mueller v. Youmans, 117 B.R. 113, 116 (Bankr. D.N.J. 1990)—for the proposition that all parties with an interest in certain real property are entitled to equal shares of the net proceeds of that real property sales, absent proof that one party is entitled to more, regardless of the existence of bankruptcy proceedings—is misplaced.

As previously noted, in New Jersey, purchasers are only charged with notice from the records that can be ascertained from a reasonable search of those records. Palamarg, 404 A.2d at 26; Sonderman v. Remington Const. Co., Inc., 603 A.2d 1, 8 (N.J. 1992). Appellant is correct that New Jersey courts have recognized that a sixty-year title search is standard practice, see Palamarg, 404 A.2d at 28; Donovan v. Bachstadt, 453 A.2d 160, 164 (1982), and that purchasers who employ standard search methodologies are entitled to rely on their findings. Sonderman v. Remington Const. Co., Inc., 603 A.2d 1, 8 (N.J. 1992). However, the case law indicates that although sixty-year searches are per se reasonable, there is no black letter requirement for such a search; rather, the facts and circumstances of the case, along with the customs and practices of the industry, define what is reasonable. Palamarg, 404 A.2d at 28. Consequently, a bona fide purchaser will only be charged with undertaking a "reasonable" search of the particular chain of title involved. Id. at 26; Island Venture Assocs. v. New Jersey Dep't of Envtl. Protection, 179 N.J. 485, 846 A.2d 1228 (2004) ("[Courts] charge a subsequent purchaser with notice of a recorded instrument if it 'can be discovered by a reasonable search of the particular chain of title.'"). And, although what constitutes a reasonable search varies according the facts of a particular case, see Palamarg, 404 A.2d at 26, courts have frequently found that a prospective bona fide purchaser satisfies his or her obligation under the Recording Act by conducting an investigation into any instruments made in the time frame between when the seller receives a property interest and when that seller relinquishes that interest. Brunson, 582 A.2d at 1309; Wack v. Collingswood Extension Realty Co., 114 N.J. Eq. 253, 168 A. 639 (1933) ("The usual method of examining a title is to search against the party who holds the record title up until the time he parts with the title and then search

---

The Mueller case concerns the trustee's powers to order a sale under § 363(h) of property co-owned as a joint-venture; it has no relevance to the operation of the strong-arm powers.

against the person who holds the title so long as he has the title."). This appears to be the method by which the Jersey Land Abstracts report was conducted; in any event, a title search of the Property beginning with Debtor's current interest and working back in time would reveal that Debtor is the sole owner of the Property by operation of the April 1987 Deed. See Wack, 114 N.J. 253; Security Pac. Fin. Corp. v. Taylor, 474 A.2d 1096, 1097-99 (N.J. Sup. Ct. Ch. Div. 1984) (holding that there is no requirement to search beyond the previous conveyance in the seller's chain of title). Appellant does not challenge this fact or dispute that the April 1987 Deed makes no reference to the February 1987 deed, and Appellant identifies nothing else in this chain of title that would put a purchaser on notice of the existence of the February 1987 Deed. See Friendship Manor, Inc. v. Greiman, 581 A.2d 893, 895 (N.J. Super. Ct. App. Div. 1990) (finding no requirement to search for instruments which came before the conveyance to seller as long as nothing exists in that deed to put prospective purchaser on notice to conduct further inquiry); cf. Island Venture Associates v. New Jersey Dep't of Envtl. Prot., 846 A.2d at 1229-30 (holding it proper to rely on face of master deed that referenced only some restrictive covenants imposed by neighboring property where nothing indicated existence of other covenants). Indeed, Appellant's sole argument is that the Trustee's strong-arm powers are inapplicable because a sixty-year title search would have revealed Appellant's interest. However, as the above case law make clear, there is no sixty-year requirement, and, like the Bankruptcy Court below, I am satisfied that a reasonable search of Debtor's chain of title would not have revealed Appellant's interest in the Property. See Security Pac. Fin. Corp., supra. Accordingly, I affirm the Bankruptcy Court's conclusion that the Trustee could avoid Appellant's interest in the Property by operation of § 544(a)(3).

Turning to Appellant's final argument regarding the Trustee's strong-arm power, Appellant

contends that, even if Trustee has a legal interest in the Property superior to Appellant's, Appellant nevertheless has an equitable interest that falls beyond the Trustee's strong-arm avoidance powers. Appellant Br., 17-18.  Even assuming, arguendo, that Appellant has an equitable interest in the Property under New Jersey law, such an interest is avoided by the Trustee's strong-arm powers under § 544(a)(3), which provides that the interests of a trustee, as a hypothetical bona fide purchaser, prevail over the equitable interests of other parties.  In re Bridge, 18 F.3d at 204; see also In re Day, 443 B.R. 338, 349 (Bankr. D.N.J. 2011) ("The trumping position given to bona fide purchasers over preexisting equitable interest holders in real property is historic." (Emphasis added.)); In re Peebles, 197 B.R. 799, 801 (Bankr. W.D. Pa. 1996) ("[E]quitable principles are not applicable against a bona fide purchaser . . . .").[11]  Thus, the Bankruptcy Court did not err in finding that the Trustee could avoid any equitable interest in the property held by Appellant.

### B. Appellant's Cross-Motion for Summary Judgment

Appellant additionally argues that the Bankruptcy Court erred by denying her cross-motion for summary judgment as to the Trustee and the Third Party Defendants.  With respect to the Trustee, my decision to affirm the Bankruptcy Court's grant of summary judgment in the Trustee's favor necessarily entails affirming the denial of Appellant's cross-motion against the Trustee. With respect to Appellant's cross-motion against the Third Party Defendants—in which Appellant contended that the Third Party Defendants did not hold any interest on her one-half interest in the Property because Appellant was not a signatory to those mortgages—the Bankruptcy Court

---

[11] In support, Appellant cites several cases which involve using strong-arm clause to protect unsecured creditors against unrecorded or unperfected interests and secret liens. See Matter of McElwaney, 40 B.R. 66, 70 (Bankr. M.D. Ga. 1984); In re Cohoes Indus. Terminal, Inc., 70 B.R. 214 (S.D. N.Y. 1986), aff'd 831 F.2d 283 (2d Cir. 1987); In re Granada, Inc., 92 B.R. 501 (Bankr. D. Utah 1988) (arguing that the strong-arm clause is meant to prevent fraud on the part of debtors). I note that none of these cases are binding on this Court and, in any event, are not persuasive in light of the above cited case law.

14

declined to entertain Appellant's arguments on procedural grounds.  Specifically, the Bankruptcy Court determined that Appellant's motion as to the Third Party Defendants violated the local bankruptcy rules because the scope of demanded relief exceeded the scope of relief demanded in the original summary judgment motion.  Appellant does not challenge this procedural determination, but rather contends that the Bankruptcy Court should have ruled in Appellant's favor on the issue of the mortgages for the same reason that the Bankruptcy Court should have found that the Trustee could not have avoided Appellant's one-half interest in the Property.  Again, I have already determined that the Bankruptcy Court correctly concluded that the Trustee could avoid any interest Appellant may have had in the Property, and thus Appellant's cross-motion is moot.  Moreover, even if Appellant has a viable additional argument against the Third Party Defendants—which is not apparent in this appeal—the Bankruptcy Court did not abuse its discretion in declining to entertain this aspect of Appellant's cross-motion.

In the District of New Jersey, a party may file a cross motion against an original movant only so long as that cross motion relates to the subject matter of the original motion. See D.N.J. L.Civ.R. 7.1(h) (which is incorporated into adversarial bankruptcy proceedings by D.N.J. LBR. 1001-1)[12]; see also D.N.J. LBR. 9013-1(d)(1) ("No motion shall be designated as a cross motion unless it is related to the original motion.").  The Trustee's original summary judgment motion sought a declaration that he had sole ownership of the Property and that if not, any interest the Appellant may have had be avoided pursuant to the Trustee's "strong-arm" powers—i.e., the motion pertained only to determining the interests between Appellant and the Trustee/Debtor.

---

[12]   L. Civ. R. 7.1(h) specifically provides: "A cross-motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers and may be noticed for disposition on the same day as the original motion, as long as the opposition papers are timely filed." (Emphasis added.)

15

Thus, the portion of Appellant's cross-motion seeking a determination of her interest vis-à-vis the Third Party Defendants is outside the scope of the Trustee's motion, and thus not permitted under the rules. The Bankruptcy Court's decision to deny this aspect of Appellant's motion on procedural grounds was not an abuse of discretion. See In re Beers, 2011 WL 1627046 at *2 (D.N.J. Apr. 28, 2011); In re Corio, 2009 WL 78157 at*3 (D.N.J. Jan. 9, 2009), aff'd, 371 F. App'x 352 (3d Cir. 2010). Accordingly, I affirm the Bankruptcy Court's decision to deny Appellant's cross-motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Bankruptcy Court's decisions to grant summary judgment in favor of the Trustee, and to deny Appellant's cross-motion for summary judgment, are affirmed.

An appropriate order shall follow.


Date: July 16, 2014                    /s/ Freda L. Wolfson
                                       Freda L. Wolfson, U.S.D.J.